**In re Angela Sue DELANEY–MORIN, Debtor.**

**Angela Sue Delaney–Morin, Appellant,**

v.

**John Day, Appellee.**

BAP No. AZ–03–1302–MoRyP.
Bankruptcy No. 02–01531–BHC–RJH.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 24, 2003.

Filed Dec. 18, 2003.

Angela Sue Delaney–Morin, Bullhead City, AZ, Pro se Appellant.

Michael C. Anderson, Anderson Law Offices, Bullhead City, AZ, for John Day.

Before: MONTALI, RYAN and PERRIS, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

Debtor Angela Sue Delaney–Morin ("Debtor") filed a chapter 13 petition to stay a foreclosure sale. Creditor John Day ("Creditor") filed a motion requesting relief from stay (the "Motion") to foreclose his interest in Debtor's real property and mobile home. The bankruptcy court granted the Motion, finding that there had been post-petition defaults.

Debtor appeals from the bankruptcy court's order granting the Motion, claiming that the alleged defaults were either non-existent or minor and easily curable and therefore did not constitute appropriate cause to grant relief from stay. We REVERSE.

## I. FACTS

Debtor executed a Promissory Note and Deed of Trust in favor of Creditor secured by Debtor's real property located in Mohave County, Arizona, together with Debtor's mobile home (the "Property"). Debtor filed her chapter 13 petition on November 12, 2002, in order to stay Creditor's foreclosure sale of the Property.

On March 14, 2003, Creditor filed the Motion. It requested relief from the automatic stay to foreclose on the following grounds: (1) that Debtor had not made post-petition property tax payments; (2) that Debtor owed pre-petition real property taxes which were not provided for in her chapter 13 plan; (3) that Debtor had not paid sewer assessments as they became due; and (4) that Debtor had no equity in the Property.

The allegations in the Motion were not supported by any competent, admissible evidence. Debtor filed a response to the Motion (the "Response") stating that pre-petition taxes in the amount of $166.00 were erroneously omitted from her chapter 13 plan, that the plan provides for sewer assessments, and that post-petition property taxes had not been paid because they were not yet due. The Response did not address the alleged lack of equity.

A non-evidentiary preliminary hearing on the Motion was scheduled for April 29, 2003. A Notice of that preliminary hearing referring to it as "non-evidentiary" was mailed to Debtor on April 17, 2003. On April 28, 2003, the bankruptcy court received a fax from Debtor seeking a continuance of the preliminary hearing, stating

that she had had surgery on April 3, and again on April 17, 2003, in Las Vegas and that she did not receive notice of the hearing until she returned home on April 25, 2003. Further, Debtor's fax alleged that she went to the hospital again on April 27, 2003, due to an infection from the surgeries, causing her to be bedridden and not being able to appear at the hearing.

The bankruptcy court treated Debtor's fax as a motion to continue the hearing, which it denied. The court noted that Debtor had mailed her motion to continue to opposing counsel and faxed it to the court, and stated that "[i]f the debtor was in a position to be able to fax it to the Court, the debtor certainly could have faxed it to opposing counsel."[1] Tr. of Proceedings (Apr. 29, 2003), at 3.

At the hearing, Creditor's counsel summarized some of the grounds stated in the Motion and advanced two more grounds for relief from the automatic stay which had not been stated in the Motion: (1) Debtor allegedly had allowed the fire insurance to lapse; and (2) Debtor allegedly was two months in arrears on post-petition obligations to Creditor. After the bankruptcy court questioned Creditor's counsel whether Debtor had filed a response to the Motion, Creditor's counsel represented that the Response "... in essence says, 'We are going to cure all these defects by an amended plan,' and there's no amended plan." Tr. of Proceedings (Apr. 29, 2003), at 3. The court orally granted relief from the automatic stay on the grounds that "[t]here has (sic) apparently been post petition defaults that have not been cured

and no real defense on the merits raised in the answer, other than that they would be cured, which they haven't been ..." *Id.* at 3–4. It entered an order granting the Motion on May 22, 2003, and Debtor filed a timely notice of appeal and a motion for stay pending appeal on May 29, 2003. The bankruptcy court granted Debtor's motion for a stay.

## II. ISSUE

Did the bankruptcy court abuse its discretion by lifting the automatic stay?

## III. STANDARD OF REVIEW

The bankruptcy court's decision granting or denying relief from the automatic stay is a final decision which we review for an abuse of discretion. *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir.2000); *Moldo v. Matsco, Inc. (In re Cybernetic Servs., Inc.)*, 252 F.3d 1039 (9th Cir.2001). Decisions committed to the bankruptcy court's discretion will be reversed only if "based on an erroneous conclusion of law or when the record contains no evidence on which the trial court rationally could have based that decision." *Vanderpark Prop., Inc. v. Buchbinder (In re Windmill Farms, Inc.)*, 841 F.2d 1467, 1472 (9th Cir.1988) (citation omitted).

## IV. DISCUSSION

Despite the importance of the automatic stay as a vital protection of the bankruptcy debtor, *see Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571

---

1. Debtor argues on appeal that the reason why she did not fax a copy of her motion to continue to Creditor's counsel was that he did not have a fax machine "within which [sic] to receive facsimile transmittals." Appellant's Opening Brief (July 25, 2003), at 7–8. Debtor complains that Creditor's counsel should have said as much to the bankruptcy court instead

of remaining silent on this issue during the hearing on April 29, 2003. At oral argument before us Creditor's counsel admitted that his fax machine will not accept incoming faxes unless the sender calls in advance. Although we find Creditor's counsel's practice questionable, we do not address this issue given our disposition of this appeal.

(9th Cir.1992), section 362(d)(1)[2] allows a bankruptcy court to grant relief from the automatic stay for cause. Such relief may include terminating, annulling, modifying, or conditioning such stay. Thus, section 362 gives the bankruptcy court wide latitude in crafting relief from the automatic stay. *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir.1995). "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *MacDonald v. MacDonald (In re MacDonald)*, 755 F.2d 715, 717 (9th Cir.1985).

■ The bankruptcy court granted the Motion on the grounds that Debtor had not cured *post-petition* defaults and failed to raise a defense "on the merits ... other than that they would be cured, which they haven't been ...." Therefore, although the Motion alleged a lack of equity and *pre-petition* failure to pay property taxes, the bankruptcy court did not grant relief from stay on this basis. The court may not have considered this sufficient cause to lift the automatic stay because Debtor's Response stated that the amount of unpaid pre-petition taxes was only $166.00 and that arrearage, and the pre-petition sewer assessments, would be included in an amended plan. The alleged post-petition defaults, however, could be cause to grant relief from the automatic stay if proven by competent evidence or if contested after proper notice. *See Ellis v. Parr (In re Ellis)*, 60 B.R. 432 (9th Cir. BAP 1985) (failure to make post-confirmation payments is "cause" for lifting the stay).

In the Motion, Creditor alleged a default in post-petition property taxes and his counsel raised this issue again during the preliminary hearing on April 29, 2003.

Debtor's Response stated, however, that the real property taxes were incurred in September 2002, and that speaking with the Mohave County Treasurer's Office, she was told that the tax statements for the 2003 tax year would not be issued until September 2003. Debtor therefore contended that there were currently no post-petition real property taxes due. Creditor's counsel neither contested Debtor's allegations nor did he mention anything about them during the preliminary hearing. Because the notice of the hearing explicitly stated that it was a "non-evidentiary" hearing, it would have been inappropriate for the bankruptcy court to grant the Motion based on those disputed allegations.

Creditor's Motion also alleged that Debtor had not paid sewer assessments as they became due. Debtor's Response, in contrast, argued that the sewer assessments are provided for in her chapter 13 plan, implying that they are pre-petition obligations. First, we note that it is unclear whether Creditor refers to the sewer assessments as pre– or post-petition defaults. He refers to them once as "sewer assessments as they have become due," and a second time as "sewer assessments post-petition payments," which may or may not be the same as a default in paying post-petition assessments. Second, when the bankruptcy court considered the Motion at the hearing on April 29, 2003, Creditor did not raise this issue. Therefore, if sewer assessments remained an issue at all, they were apparently a disputed issue. Again, because the notice of the hearing explicitly stated that it was a "non-evidentiary" hearing it would have been inappropriate for the bankruptcy court to grant the Motion on this basis.

---

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the

Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

At oral argument on appeal Creditor's counsel informed us that the post-petition defaults were established by his "avowals," which we construe generally to be his offer of proof of additional defaults not mentioned in the Motion. We recognize that these allegations, if true, are potentially serious concerns, but for several reasons they were not an adequate basis to grant the Motion.[3] First, these "avowals" are not evidence. Second, even if they could be treated as an offer of proof amounting to the equivalent of evidence, Debtor was misled by being told the hearing would be "non-evidentiary."

Third, because Debtor was not present at the hearing, the allegations were not made in the Motion, and Debtor was informed that the hearing was non-evidentiary, she did not have the opportunity to respond to the allegations. This raises due process concerns. *See Owens–Corning Fiberglas Corp. v. Center Wholesale, Inc. (In re Center Wholesale, Inc.)*, 759 F.2d 1440 (9th Cir.1985) (a cash collateral order was deemed void on due process grounds where an interested creditor has insufficient notice to adequately prepare for the hearing); *Smith v. Wheeler Tech., Inc. (In re Wheeler Tech., Inc.)*, 139 B.R. 235 (9th Cir. BAP 1992) (reversing order for turnover of property based on ex parte motion, where the bankruptcy rules expressly required the initiation of an adversary proceeding and such rules incorporated due process concerns).

Furthermore, Rule 7054(c) (incorporating Fed.R.Civ.P. 54(c)), made applicable to contested matters such as motions for relief from stay by Fed. R. Bankr.P. 9014(c), reflects a key aspect of this due process concern: that a court cannot grant by default more relief than is requested. Rule 54(c) provides in its first sentence that "a judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." A court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings. "Unless all parties in interest are in court and have voluntarily litigated some issue not within the pleadings, the court can consider only the issues made by the pleadings, and the judgment may not extend beyond such issues nor beyond the scope of the relief demanded." *Sylvan Beach, Inc. v. Koch*, 140 F.2d 852, 861 (8th Cir.1944). The relief must be based on what is alleged in the pleadings and justified by plaintiff's proof, which the opposing party has had an opportunity to challenge. "Rule 54(c) cre-

---

**3.** Property insurance generally constitutes an indispensable protection and lack of insurance jeopardizes a secured creditor's interests in its collateral. This concern is somewhat reduced in the case before us, because Creditor has paid for the insurance in order to prevent it from lapsing; thus, he does not face the risk of loss of the Property. Nevertheless, if Debtor failed to pay for the insurance, that constitutes a default. A secured creditor lacks adequate protection if there is a threat of a decline in the value of the property. *In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr.S.D.N.Y.1994). A threat to decline includes failure to maintain property insurance. *Id.* at 902 n. 9. *See also Hadley v. Victory Construction Co., Inc. (In re Victory Construc-*

*tion Co., Inc.)*, 37 B.R. 222, 226 (9th Cir. BAP 1984) (stay was granted, conditioned on the debtor keeping current fire insurance).

The second allegation that Creditor's counsel raised for the first time during the hearing on April 29, 2003, is that Debtor was two months in arrears. A failure to make regular mortgage payments after filing bankruptcy constitutes "cause" for relief from stay. *In re Jones*, 189 B.R. 13 (Bankr.E.D.Okla.1995). Thus, if the alleged default were shown to be true, Debtor would have been in default with post-petition payments and we could not hold clearly erroneous the bankruptcy court's determination that cause existed for terminating the automatic stay.

ates no right to relief premised on issues not presented to, and litigated before, the trier." *Dopp v. HTP Corp.*, 947 F.2d 506, 518 (1st Cir.1991). *See also Rivinius, Inc. v. Cross Mfg., Inc. (In re Rivinius, Inc.)*, 977 F.2d 1171, 1177 (7th Cir.1992) (holding that "Rule 54(c) does not allow [a party] to obtain relief based upon a . . . theory that was not properly raised at trial"). The requirements of notice and a hearing or the opportunity to be heard are all fundamental and state the essentials of due process and of fair play. They assure to all persons a day in court before judgment is pronounced against them. *See Sylvan Beach*, 140 F.2d at 862.

■ Finally, we consider whether the court could have granted ex parte relief from automatic stay, which is governed by Rule 4001(a)(2).[4] This rule recognizes that the granting of ex parte relief from the automatic stay is an extraordinary step that rarely is appropriate. There are extremely few situations in which threatened harm is both irreparable and so imminent that opposing parties cannot be given at least some notice and the opportunity to participate in a hearing. *See* 9 COLLIER ON BANKRUPTCY, ¶ 4001.04[5], (Lawrence P. King et al. eds., 15th ed. rev.1996). *See also In re Syndicom Corp.*, 268 B.R. 26, 31 (Bankr.S.D.N.Y.2001) (stating that relief from the automatic stay can be granted on an ex parte basis under very limited circumstances involving immediate and irreparable injury, and with procedural protections akin to those when a restraining order is sought).

In this case there are no circumstances that would justify ex parte relief. It is not evident that Creditor's interest is threatened by irreparable and imminent harm that could be a basis for this extraordinary step.

## V. CONCLUSION

The bankruptcy court granted relief from stay because of unspecified "post-petition defaults." Debtor was given no notice that the court would consider such post-petition defaults at the preliminary hearing that had been noticed as a non-evidentiary hearing. The problem, however, is that there was no evidence—competent or otherwise—to prove that there were any post-petition defaults, and in any event Debtor was told the hearing would be "non-evidentiary." Nor were there any circumstances that would justify ex parte relief.

The bankruptcy court's order granting relief from the automatic stay is therefore REVERSED.

---

4. Rule 4001 provides, in relevant part:
   [a] (2) *Ex Parte Relief.* Relief from a stay under § 362(a) or a request to prohibit or condition the use, sale, or lease of property pursuant to § 363(e) may be granted without prior notice only if (A) it clearly appears from specific facts shown by affidavit or by a verified motion that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party or the attorney for the adverse party can be heard in opposition, and (B) the movant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons why notice should not be required.
   Fed. R. Bankr.P. 4001(a)(2).