In re Candie Jill NELSON, Debtor.

Candie Jill Nelson, Appellant,

v.

Michael H. Meyer, Chapter 13 Trustee, Appellee.

BAP No. NC–05–1293–KRYB.
Bankruptcy No. 05–10660.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 24, 2006.

Filed May 15, 2006.

---

John W. Findley, Robert J. Lotero, Law Offices of John W. Findley, Walnut Creek, CA, for debtor.

Michael H. Meyer, Santa Rosa, CA, trustee.

Before: KLEIN, RYAN * and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge:

The debtor appeals the order dismissing her chapter 13 case. We conclude, first, that the court did not comply with the two-step requirement of 11 U.S.C. § 1307(c) to determine "cause" and then to weigh the alternatives of conversion or dismissal based on the "best interests of creditors and the estate," and, second, that § 1307(c)(5) "cause" based on denial of confirmation of a plan requires that the court allow the debtor an opportunity to revise the rejected plan. Hence, we RE-VERSE and REMAND.

## FACTS

Appellant, Candie J. Nelson, filed the pro se chapter 13 case in which this appeal arises on March 29, 2005, after having been involved in prior bankruptcy cases.

She was a chapter 13 debtor from December 30, 1999, until voluntarily dismissing the case on September 24, 2001.

In October 2002, she became the debtor in two chapter 7 cases, one involuntary and one voluntary. We affirmed the order for relief in the involuntary case. BAP No. NC–03–1170–PMaMc (Feb. 9, 2004). The ultimate outcome was a settlement in which $60,000 was recovered from a relative under avoiding powers and the debtor waived discharge pursuant to 11 U.S.C. § 727(a)(10).

The debtor's company, Viva Mexico, LLC, was the debtor in a no-asset chapter 7 case that was filed and closed during the pendency of her consolidated individual chapter 7 cases.

In this chapter 13 case, she initially scheduled unsecured claims of $324,382.00.

Her chapter 13 plan proposed to pay the trustee $50.00 per month for 36 months based on monthly income of $1,208.00 and expenses of $1,158.00 as reflected in Schedules I and J.

The chapter 13 trustee, appellee Michael Meyer, objected to plan confirmation based on ineligibility and lack of good faith. The ineligibility argument was that the schedules listed more than the statutory limit of $307,675.00 in unsecured nonpriority debt and did not include undischarged debts from her prior chapter 7 cases. The good faith argument was that $50.00 per month for 36 months was too little in light of the prior waiver of chapter 7 discharge.

The debtor filed responses to the objection in which she professed her good faith, asserted that her scheduled income and expenses demonstrated the limits of her ability to pay, and reported that she had amended schedules to delete an erroneously-scheduled debt and, thus, to conform with chapter 13 debt limits.

At the confirmation hearing (which the court had continued once at the debtor's request with a warning expressing doubt about the merits of the plan), the court denied confirmation without reaching the eligibility question.[1] It reasoned that a plan with 36 monthly payments of $50.00 can only be confirmed in "very extenuating circumstances" and that the presence of chapter 7 nondischargeable debt rendered the plan unconfirmable.[2]

---

* Hon. John E. Ryan, United States Bankruptcy Judge for the Central District of California, sitting by designation.

**1.** THE COURT: First of all, there's an issue as to eligibility, but let's set that aside. Tr. 6/20/05, at 2.

**2.** THE COURT: Well, first of all, in the 20

Without affording an opportunity to modify the plan after denying confirmation, the court ruled that the case would be dismissed. On appeal, the debtor complains that she was prepared to extend the plan to 60 months but had no chance to do so.

The court subsequently entered a sixteen-line "Memorandum re Dismissal," accompanied by an order dismissing the case. The memorandum noted that the sole support for the plan's payment provisions was the debtor's assertion that $50 per month was all she could afford. The legal reasoning appeared to be that the combination of a small dividend and the chapter 7 nondischargeable status of her debts precluded confirmation.[3]

There were no other findings of fact or conclusions of law addressing either plan confirmation or dismissal. Nor was there an order denying confirmation. This timely appeal ensued.

## ISSUE

Whether the court correctly applied 11 U.S.C. § 1307(c)(5) when it dismissed the case without affording the debtor an opportunity to revise her plan after it denied confirmation.[4]

## STANDARD OF REVIEW

We review a decision to dismiss a chapter 13 case for abuse of discretion. *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 871 (9th Cir. BAP 2002). The application of an incorrect legal standard is one form of abuse of discretion. *Id.* Since the court made no findings of fact, there is nothing to review for clear error.

## DISCUSSION

After reviewing the Bankruptcy Code provision governing chapter 13 dismissals generally, we focus on the first step of the statutory analysis, which requires a finding of "cause."

### I

Bankruptcy Code § 1307(c) ("Conversion or dismissal") permits the court either to dismiss or to convert a case to chapter 7, "whichever is in the best interests of creditors and the estate, for cause" based on a nonexclusive list of items of "cause." 11 U.S.C. § 1307(c).

Since this language parallels the chapter 11 conversion and dismissal provision, decisions under Bankruptcy Code § 1112(b) inform the analysis of § 1307(c). *Compare* 11 U.S.C. § 1112(b) (2000) ("whichever is in the best interest [sic] of

---

years I've been on the bench I've approved such small payments maybe four or five times for very extenuating circumstances, like somebody under a serious disability. That's number one.

Number two, is you had your discharge denied in a chapter 7 case. That means all your debts are nondischargeable. Having lost your discharge, you can't come in and try to use a Chapter 13 and for $1800 to buy it back. Tr. 6/20/05, at 2.

**3.** The court explained: "The court has almost never confirmed Chapter 13 plans calling for such minuscule payments, even absent other negative considerations. In this case, there are two negative considerations. First, her

debts are so high that dividing $1800 amongst them makes their dividend microscopic. Secondly, and most importantly, Nelson's discharge was denied in a prior Chapter 7 case filed less than three years ago; all of the debts in this case were debts when that case was filed."

Hence, it ruled "since all of the debts are nondischargeable and both the payments and the dividend are next to nothing, the plan cannot be confirmed." Memorandum re Dismissal at 1–2.

**4.** Although the debtor also argues the merits of confirmation, the sole issue presented by the order on appeal is dismissal.

creditors and the estate, for cause"),[5] *with* 11 U.S.C. § 1307(c); *In re Henson,* 289 B.R. 741, 752–53 (Bankr.N.D.Cal.2003).

■ Sections 1307(c) and 1112(b) establish a two-step analysis for dealing with questions of conversion and dismissal. First, it must be determined that there is "cause" to act. Second, once a determination of "cause" has been made, a choice must be made between conversion and dismissal based on the "best interests of the creditors and the estate." *Ho,* 274 B.R. at 877; *accord, Rollex Corp. v. Assoc'd Materials, Inc. (In re Superior Siding & Window, Inc.),* 14 F.3d 240, 242 (4th Cir.1994), *cited by In re SGL Carbon Corp.,* 200 F.3d 154, 159 n. 8 (3d Cir.1999); *In re Erkins,* 253 B.R. 470, 477 n. 5 (Bankr.D.Idaho 2000); *Henson,* 289 B.R. at 749–54; *In re Shockley,* 197 B.R. 677, 680 (Bankr. D.Mont.1996); *In re Staff Inv. Co.,* 146 B.R. 256, 260–61 (Bankr.E.D.Cal.1992); 7 Collier on Bankruptcy § 1112.04[6] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2005) ("Collier"); 8 *id.* § 1307.4.

The court did not approach the question of dismissal through the mandatory two-step analysis of determining "cause" and then weighing alternatives.

## II

The outcome of this appeal turns on the initial statutory requirement that there be a determination of "cause."

The Bankruptcy Code designates items of "cause" in a nonexclusive list at § 1307(c)(1)-(10).[6] Since the triggering event was denial of plan confirmation, we search the list for an applicable "cause."[7]

## A

The statutory "cause" that applies to denial of plan confirmation is § 1307(c)(5): "denial of confirmation of a plan under section 1325 of this title *and* denial of a request made for additional time for filing another plan or a modification of a plan."[8] 11 U.S.C. § 1307(c)(5) (emphasis supplied).

■ The conjunction "and" in § 1307(c)(5) means that there are two essential elements that each must be satisfied in order to constitute "cause" to convert or dismiss a case following the denial of confirmation of a plan: (1) denial of

5. This part of § 1112(b) was reworded by the Bankruptcy Abuse Prevention & Consumer Protection Act of 2005, Pub.L. 109–8 ("2005 Act"), to: "whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b) (2006). The 2005 Act does not apply here, as this case was filed before its effective date.

6. The version of § 1307(c) applicable to this appeal designates ten items of "cause." The 2005 Act added an eleventh item (nonpayment of domestic support obligations that first come due postpetition). 11 U.S.C. § 1307(c)(11) (2006). The 2005 Act also inserted, as new § 1307(e), a twelfth designation of cause (not filing certain tax returns) that is subject to the same analysis of conversion or dismissal, "whichever is in the best interest[s] of the creditors and the estate." 11 U.S.C. § 1307(e) (2006). It did not otherwise alter § 1307(c).

7. We need not concern ourselves with items not enumerated in the statute because the court made none of the findings that would be required in order to describe an alternative form of "cause" not named in the nonexclusive statutory list.

8. Thus, the § 1307(c) language pertinent to this appeal is:

the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—... (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan; ....

11 U.S.C. § 1307(c)(5) (2000).

confirmation; and (2) denial of a request for time to file a new or a modified plan. As written, the requirements of § 1307(c)(5) are cumulative and mandatory. *Id.* In other words, both elements must exist in order to constitute "cause" to dismiss or convert a chapter 13 case under that authority.

In this instance, the first element under § 1307(c)(5) is plainly satisfied because the court denied confirmation of the debtor's plan.

The second element under § 1307(c)(5), however, presents a problem because there was no "denial of a request made for additional time for filing another plan or a modification of a plan." Although the debtor did not request additional time for filing another plan or modifying the plan, the court did not afford her an opportunity to make such a request after it denied plan confirmation.

■ We are persuaded that the second element of § 1307(c)(5) requires, at a minimum, that the court must afford a debtor an opportunity to propose a new or modified plan following the denial of plan confirmation.[9] *See* 8 COLLIER ¶ 1307.04 (debtor should normally be given at least one opportunity to submit modified plan). Because the court did not offer the debtor such an opportunity, the second element of § 1307(c)(5) was not satisfied. It follows that there was no "cause" to dismiss or convert the chapter 13 case under that authority.

## B

■ The policy underlying the second element of § 1307(c)(5) relating to a request for time to try again is that chapter 13 plan confirmation is an iterative process. A debtor who wishes to submit to the rigors of living for a number of years in the straightjacket of a plan that represents one's "best efforts" to pay creditors should, in principle, be permitted the latitude to correct perceived deficiencies in proposed plans.

This case illustrates the purpose of the policy. The debtor has indicated on appeal a desire to propose a 60–month plan, instead of the 36 months initially proposed. It is also possible that she will sharpen her pencil and either project increases in disposable income or propose a mechanism for capturing increases in such income during the life of a plan. In other words, she might propose a plan that would be worthy of being confirmed.

Since the court did not comply with § 1307(c)(5) when it preempted the debtor's chance to try again and dismissed the case after the first denial of plan confirmation, it applied an incorrect legal standard and thereby abused its discretion.

## III

■ We are mindful that the debtor also wants us to review the denial of confirmation, especially whether the plan was proposed in good faith as required by 11 U.S.C. § 1325(a)(3). But there are no findings addressed to § 1325(a)(3), and

---

**9.** We need not reach, and do not decide, the further question whether § 1307(c)(5) "cause" could ever be invoked when a debtor does not actually request additional time. Although the second element of § 1307(c)(5) could be read literally to enable a debtor to block dismissal or conversion based on § 1307(c)(5) "cause" by rejecting an opportunity to revise a plan, that further question is not presented here. No such opportunity was afforded. We note, however, that a debtor who declines to revise a plan after denial of confirmation becomes vulnerable to § 1307(c)(1) "cause" for unreasonable delay by the debtor that is prejudicial to creditors. 11 U.S.C. § 1307(c)(1). The court here, however, made no findings pertinent to unreasonable delay by the debtor or to prejudice to creditors.

there is no order denying confirmation. To be sure, the court's mention of our so-called *Warren* decision hints that it was not persuaded of the debtor's good faith. Nevertheless, the record does not show that the court considered the totality of the circumstances and that, as required by *Warren*, it "conduct[ed] more than a ministerial review related to payments in order that it may make an informed and independent judgment concerning whether [the] plan was proposed in good faith." *Fid. & Cas. Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 95 (9th Cir. BAP 1988).[10]

■ Lacking a record that would enable us to have a complete understanding of the issues, we will not review the denial of confirmation of the initial plan. *See Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223 (9th Cir.1999). Nor, if the debtor modifies her plan, would such review be useful.[11] If, on remand, the debtor does not proceed diligently, she may become vulnerable to dismissal or conversion based on unreasonable delay prejudicial to creditors under § 1307(c)(1).

The court will be free on remand to examine the debtor's good faith under the totality-of-the-circumstances analysis and to determine whether there is some form of "cause" that would warrant either conversion or dismissal.[12]

**10.** Two notes of caution need to be sounded regarding *Warren*. First, our narrow holding in *Warren* (to which we still adhere) was that § 1325(a)(3) "good faith" is independent of § 1325(b) "best efforts" and, under the law of the Ninth Circuit, is to be determined under the totality of the circumstances. *Warren*, 89 B.R. at 94–95, *citing Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1389–90 (9th Cir.1982). As in this instance, however, *Warren* is often cited for an eleven-item laundry-list of "guidelines" indicative of good faith that it quoted from decisions of other circuits. That list, which the Ninth Circuit has not expressly adopted, needs to be understood as the beginning and not the end of the analysis. The controlling Ninth Circuit analysis remains totality of the circumstances. *See Ho*, 274 B.R. at 876–77. This appeal illustrates the problem with the *Warren* list. Although the bankruptcy court emphasized the existence of chapter 7 nondischargeable debt (which is listed in *Warren*), no reported decision of ours, or of the Ninth Circuit, has actually held that the presence of such debt suffices to deny plan confirmation.

Second, important aspects of *Warren* are obsolete. It was decided in 1988 in the midst of doubts about the legitimacy of the "chapter 20" strategy of serially proceeding under chapter 7 to discharge debt and then in chapter 13 to deal with debt not discharged in the chapter 7 case. In 1991, the Supreme Court upheld the chapter 20 strategy. *Johnson v. Home State Bank*, 501 U.S. 78, 87, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). That decision necessarily affects the *Warren* analysis regarding the quantum of the burden of persuasion and, perhaps, the laundry-list. Thus, while the narrow holding of *Warren* may retain vitality, its rationale must be construed and qualified in light of subsequent case law developments.

**11.** The record, however, compels us to note for purposes of proceedings on remand that the court incorrectly stated the law when it asserted that chapter 13 plans calling for small payments can be confirmed only in "very extenuating circumstances" and reported that it has "almost never confirmed Chapter 13 plans calling for such minuscule payments." It is settled that there is no substantial-repayment requirement for chapter 13 plan confirmation and that each plan must be assessed on a case-by-case basis. *E.g., Goeb*, 675 F.2d at 1389–91 ("we decline to impose a substantial-repayment requirement" and "bankruptcy courts cannot substitute a glance at the amount to be paid under the plan for a review of the totality of the circumstances"); *Ho*, 274 B.R. at 876–77 (same) *Warren*, 89 B.R. at 92 (same); Kenneth N. Klee & Frank N. Merola, *Ignoring Congressional Intent: Eight Years of Judicial Legislation*, 62 Am. Bankr. L.J. 1, 18–19 (1987).

**12.** In view of our conclusion, we need not address the debtor's argument that a separately-noticed motion to dismiss or convert

## CONCLUSION

The Bankruptcy Code contemplates in § 1307(c)(5) that chapter 13 debtors be afforded more than one opportunity to confirm a chapter 13 plan before the case is dismissed or converted following denial of plan confirmation. As one of the elements of § 1307(c)(5) "cause" was missing, mere denial of confirmation did not constitute the requisite cause. We REVERSE the order dismissing the case and REMAND for further proceedings consistent with this decision.

was required before the court could act in that respect.